IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| RYAN MORRIS, | * | |
| | * | |
| Plaintiff | * | |
| | * | |
| v. | * | Civil Action No. MJM-22-3090 |
| | * | |
| PP&G, INC., d/b/a, | * | |
| NORMA JEANS GENTLEMEN'S CLUB, | * | |
| | * | |
| Defendant | * | |

\* \* \* \* \* \* \* \* \* \*

## MEMORANDUM

Plaintiff Ryan Morris ("Plaintiff") commenced this putative collective action and class action against defendant PP&G, Inc. d/b/a Norma Jeans Gentleman's Club ("Defendant") alleging violations of the Fair Labor Standards Act of 1938, as amended, ("FLSA") as well as the Maryland Wage Hour Law and the Maryland Wage Payment Act. Currently pending is Plaintiff's Motion for Notice to Potential Plaintiffs and for Conditional Certification (the "Motion"). ECF 10. In support of the Motion, Plaintiff filed a memorandum of law, a sworn declaration, a proposed notice to potential collective action plaintiffs, and a proposed consent form for potential plaintiffs to join the collective action. ECF 10-1, 10-2, 10-3, and 10-4, respectively. Defendant has filed a response in opposition, ECF 11, and Plaintiff has filed a reply, ECF 13. A hearing is not necessary. L.R. 105.6. For reasons explained herein, the Motion will be GRANTED.

  **I.**  **FACTUAL BACKGROUND**

Defendant is the owner and operator of Norma Jeans Club, a night club located in Baltimore, Maryland that features nude and semi-nude exotic dancers for entertainment. Pl. Decl. ¶¶ 2, 3, 5. Ryan Morris ("Plaintiff") and more than one hundred individuals performed as exotic

dancers at Norma Jeans Club during the period January 2020 through the present ("Class Period"). *Id.* ¶ 2. Plaintiff was employed as an exotic dancer at Norma Jeans Club for about nine years in total, including 2006 through about 2010, 2014 through 2017, 2019 through mid-March 2020; and about August 2020 through about September 2021. *Id.* ¶ 4. Defendant commonly "misclassified" Plaintiff and other exotic dancers as non-employee contractors. *Id.* ¶¶ 6, 19. Despite their employment classification, Defendant "retained the absolute right and authority to control and direct" the work duties of Plaintiff and other exotic dancers and required them to "to follow Defendant's rules, procedures, policies, and codes of conduct relating to performing as exotic dancers" at Normal Jeans Club. *Id.* ¶¶ 7–8. Defendant exercised its authority over Plaintiff and other exotic dancers by enforcing disciplinary actions and fines for non-compliance with "Defendant's rules, procedures, polices, and codes of conduct…." *Id.* ¶ 9. Plaintiff and other exotic dancers "performed the same or substantially similar exotic dancer job duties while supervised and directed by Defendants managers, house mom, and other employees and/or contractors and for the entertainment" of Defendant's customers at Norma Jeans Club. *Id.* ¶¶ 11, 19.

Defendant had actual knowledge of all hours Plaintiff and other exotic dancers worked or performed as exotic dancers but did not pay any wages or any form of compensation. *Id.* ¶¶ 12–13, 17, 19. Plaintiff and other exotic dancers were compensated exclusively in the form of tips or gratuities directly from customers, but Defendant "never permitted" Plaintiff or other exotic dancers "to keep or retain all tips or gratuities received from Defendant's customers…." *Id.* ¶¶ 14, 18. Defendant or its managers "charged and/or deducted" kickbacks from Plaintiff and other exotic dancers before and during each work shift, including "a mandatory per-shift house fee kickback ranging from $45.00 to $100.00[.]" *Id.* ¶¶ 15, 19. Additionally, Defendant or its managers "deducted and/or assigned" tips and gratuities received from Plaintiff and other exotic dancers,

including "mandatory payment or assignment of tips to Defendant's managers, supervisors, and non-dancer vendors and/or assignees in an amount ranging from about $40.00 to $100.00 per shift." *Id.* ¶¶ 16, 19.

According to Plaintiff, Defendant owes to Plaintiff and other exotic dancers unpaid minimum wage compensation, re-payment of kickbacks and tips or gratuities, and statutory liquidated damages under FLSA. *Id.* ¶ 21. Many of the exotic dancers who are members of the putative class are unaware of the pending lawsuit or of their right to opt-in and join this lawsuit for recovery. *Id.* ¶ 22. Defendant is in possession and control of identifiers and contact information for each of the other putative class members. *Id.* ¶ 23. Many of the last known mailing addresses for the other putative class members are likely to be inaccurate because they regularly move for work or personal reasons and do not maintain the same address for extended period, but the putative class members typically communicate by email, telephone, or text message. *Id.* ¶¶ 24 – 25.

## II.     LEGAL STANDARD

Under the FLSA, a plaintiff may bring a civil action against an employer on behalf of herself and "other employees similarly situated." 29 U.S.C. § 216(b). Section 216 "establishes an 'opt-in' scheme, whereby potential plaintiffs must affirmatively notify the court of their intentions to be a party to the suit." *Baylor v. Homefix Custom Remodeling Corp.*, 443 F. Supp. 3d 598, 604 (D. Md. 2020) (quoting *Quinteros v. Sparkle Cleaning, Inc.*, 532 F. Supp. 2d 762, 771 (D. Md. 2008)). The statute specifically requires that an employee provide "consent in writing" to become a party plaintiff and that such consent be filed in the court where the action is brought. 29 U.S.C. § 216(b).

Whether to certify a conditional collective action and facilitate notice to potential plaintiffs "are left to the court's discretion." *Syrja v. Westat, Inc.*, 756 F. Supp. 2d 682, 686 (D. Md. 2010).

> In deciding whether to certify a collective action under the FLSA, courts generally follow a two-stage process. In the first stage, sometimes referred to as the "notice stage," the court makes a threshold determination of "whether the plaintiffs have demonstrated that potential class members are 'similarly situated,'" such that court-facilitated notice to the putative class members would be appropriate. *Camper v. Home Quality Mgmt., Inc.,* 200 F.R.D. 516, 519 (D.Md.2000). In the second stage, following the conclusion of discovery, "the court engages in a more stringent inquiry to determine whether the plaintiff class is [in fact] 'similarly situated' in accordance with the requirements of § 216, and renders a final decision regarding the propriety of proceeding as a collective action." *Rawls v. Augustine Home Health Care, Inc.,* 244 F.R.D. 298, 300 (D.Md.2007). This second stage, which typically begins when the defendant files a motion for decertification, is sometimes referred to as the "decertification stage." *See id.*

Syrja, 756 F. Supp. 2d at 686.

Courts in this circuit have considered employees "similarly situated" under 29 U.S.C. § 216(b) when they "raise a similar legal issue as to . . . nonpayment or minimum wages or overtime arising from at least a manageably similar factual setting with respect to their job requirements and pay provisions, but their situations need not be identical." *Rosinbaum v. Flowers Foods, Inc.*, 238 F. Supp. 3d 738, 743 (E.D.N.C. 2017) (citation omitted); *see also Montoya v. S.C.C.P. Painting Contractors, Inc.*, Civ.No. CCB-07-455, 2008 WL 554114, at *2 (D. Md. Feb. 26, 2008) (citing *De Luna–Guerrero v. North Carolina Growers' Ass'n, Inc.*, 338 F.Supp.2d 649, 654 (E.D.N.C. 2004)); *Edwards v. Optima Health Plan*, No. 2:20CV192 (RCY), 2021 WL 1174724, at *4 (E.D. Va. Mar. 29, 2021) ("District courts have generally found that the primary focus at step one is on legal issues, and that the plaintiffs' and prospective class members' circumstances do not need to

4

be factually identical."). "This Court has held that a group of FLSA plaintiffs is similarly situated if they can show that they were victims of a common policy, scheme, or plan that violated the law. *Baylor*, 443 F. Supp. 3d at 605 (citing *Butler v. DirectSAT USA, LLC*, 876 F.Supp.2d 560, 566 (D. Md. 2012)); *see also Montoya*, 2008 WL 554114, at *2 ("Potential plaintiffs will be considered similarly situated when, collectively, they were victims of a common policy or scheme or plan that violated the law.").

Conditional certification at the "notice" stage requires "a minimal evidentiary showing that a plaintiff can meet the substantive requirements of 29 U.S.C. § 216(b)[.]" *Baylor*, 443 F. Supp. 3d at 605. However, the court may "deny certification outright[]" "[w]hen sufficient evidence in the record at the initial 'notice' stage makes it clear that notice is not appropriate[.]" *Syrja*, 756 F. Supp. 2d at 686 (quoting *Purdham v. Fairfax County Pub. Sch.,* 629 F.Supp.2d 544, 547 (E.D.Va.2009)). "In particular, a court may determine that conditional certification is inappropriate where multiple claims cannot be adjudicated efficiently because they would require 'substantial individualized determinations for each class member.'" *Id.* (quoting *Purdham,* 629 F.Supp.2d at 549).

To make the showing necessary to justify conditional certification, a plaintiff's allegations "must consist of more than 'vague allegations' with 'meager factual support,' but it need not enable the court to reach a conclusive determination whether a class of similarly situated plaintiffs exists." *Bouthner v. Cleveland Const., Inc.*, Civ. No. RDB-11-0244, 2012 WL 738578, at *4 (D. Md. Mar. 5, 2012) (citation omitted). A plaintiff "may rely on 'affidavits or other means' to make the required showing." *Id.* (quoting *Williams v. Long*, 585 F. Supp. 2d 679, 684 (D. Md. 2008)).

### III. PARTIES' ARGUMENTS

In the Motion, Plaintiff identifies several grounds to support a finding that she and other members of the putative class are similarly situated. The proposed class consists of "all individuals that worked or performed as exotic dancers for, at, or in the Norma Jeans Gentlemen's Club in Baltimore, Maryland, during the period March 2020, through the present" ("FLSA Class Members"). Mot. ¶ 1. First, Plaintiff and FLSA Class Members each worked or performed the same or substantially similar job duties as exotic dancers at Norma Jeans Club in Baltimore, Maryland. Second, Defendant commonly misclassified Plaintiff and FLSA Class Members as non-employee contractors. Third, Defendant commonly failed to pay Plaintiff and FLSA Class Members for all hours they worked or performed each week as exotic dancers at an hourly rate at least equal to the federal minimum wage ($7.25 per hour). Fourth, Defendant subjected Plaintiff and FLSA Class Members to common and class-wide policies and practices requiring them to pay Defendant or its managers and agents a per-shift kickback and deducting or assigning a portion of their tips or gratuities to Defendant or its managers and assigns. Plaintiff attests to each of the foregoing facts in her sworn declaration.

Defendant opposes conditional certification of the proposed class primarily on the grounds that Plaintiff was employed with Defendant as an assistant manager or "house mom" between January 2022 and April 2022, approximately. Opp'n ¶ 1. Defendant argues that Plaintiff is an inappropriate class representative because, as an assistant manager or "house mom," she would have benefited from tips and kickbacks and would have been responsible for enforcing the policies and practices she now alleges to be unlawful. *Id.* ¶¶ 1, 4. According to Defendant, Plaintiff's situation is not founded upon the same facts as that of the other proposed class members, and her claims would require a substantial individual determination. *Id.* ¶¶ 5–6.

In her reply, Plaintiff does not dispute that she was employed as an assistant manager or "house mom" approximately between January 2022 and April 2022 or that she benefitted materially from the unlawful policies alleged in this case. Plaintiff argues, however, that this position was "not adversarial" to those of other members of the proposed class. Reply 5–7. She notes that FLSA does not provide for a private right of action by employees against non-employer individuals that monetarily benefit from an employer's unlawful pay policies. *Id.* at 6 n.2. Plaintiff states further that it was through her role as "house mom" that she gained knowledge of Defendant's unlawful practices. *Id.* at 6. Plaintiff also points out that for the "substantial majority" of her employment with Defendant she was an exotic dancer, like all other members of the proposed class, and that her FLSA claims for damages arise from the "substantial majority" of the Class Period in which she was an exotic dancer. *Id.* at 6–7.

## IV.   DISCUSSION

The Court finds that conditional FLSA class certification is appropriate here because Plaintiff has satisfied her "minimal" burden that she and FLSA Class Members were similarly situated. *Baylor*, 443 F. Supp. 3d at 605. Specifically, Plaintiff and FLSA Class Members were subject to the same workplace policies and practices alleged in this action to violate FLSA. These policies and practices include requirements that exotic dancers pay Defendant or its agents per-shift kickbacks and deductions from tips or gratuities to be assigned Defendant or its managers. Even if Plaintiff benefitted from these policies and practices for the period she was employed as an assistant manager or "house mom," she spent the majority of the Class Period as a victim of the policies and practices like any other exotic dancer in the proposed class. Additionally, Plaintiff has attested to the fact that she and FLSA Class Members were victims of Defendant's failure to pay minimum wage and misclassification of the exotic dancers as non-employee contractors. In sum,

Plaintiff's individual FLSA claim is based on losses she suffered in common with FLSA Class Members as a result of the same alleged FLSA violations by the same employer, Defendant.

Plaintiff's situation "need not be identical" to that of every member of the proposed class. *Rosinbaum*, 238 F. Supp. 3d at 743. Other courts have provisionally certified FLSA collectives that included some employees with managerial responsibilities that were not held in common with all members of the collective. *See, e.g.*, *Harris v. Chipotle Mexican Grill, Inc.*, 49 F. Supp. 3d 564, 579–80 (D. Minn. 2014); *Emily v. Raineri Constr., LLC*, No. 4:15CV282 RLW, 2015 WL 7429993, at *4 (E.D. Mo. Nov. 20, 2015). In both *Harris* and *Emily*, the court recognized that it would be premature to determine whether varying levels of responsibility and authority among members of the putative class warranted denial of certification because, at the early "notice" stage, the parties lacked a sufficient opportunity to engage in discovery. *Harris*, 49 F. Supp. 3d at 579–80; *Emily*, 2015 WL 7429993, at *4. Indeed, "[n]umerous courts have . . . observed that 'disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis' rather than at the first stage." *Knaak v. Armour-Eckrich Meats, LLC*, 991 F. Supp. 2d 1052, 1060 (D. Minn. 2014) (quoting *Fisher v. Mich. Bell Tel. Co.*, 665 F. Supp. 2d 819, 827 (E.D. Mich. 2009)). For purposes of this initial "notice" stage of collective action certification, Plaintiff's declaration satisfies her burden of showing workplace policies and practices that violated FLSA in ways that impacted all members of the putative class. This is not a case involving different locations, different employers, and a myriad of different classes of employees, such that it would be inefficient to adjudicate the putative class members' claims together. "[F]actual distinctions of the type claimed by [Defendant] provide no basis to deny initial certification of a collective action under the FLSA." *McLaurin v. Prestage Foods, Inc.*, 271 F.R.D. 465, 470

(E.D.N.C. 2010). Defendant's objections "are premature and are more appropriately considered during the second stage of the collective action certification." *Id.*

For the foregoing reasons, Plaintiff's Motion for Notice to Potential Plaintiffs and for Conditional Certification (ECF 10) will be GRANTED. A separate Order follows.

August 22, 2023 \
Date

/S/ \
Matthew J. Maddox \
United States Magistrate Judge