IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| RYAN MORRIS | * |
| | * |
|     PLAINTIFF, | * |
| | * |
|  v. | *  Case No. 1:22-cv-03090 |
| | * |
| PP&G, INC. | * |
| NORMA JEANS GENTLEMEN'S CLUB | * |
| | * |
|     DEFENDANT. | * |

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

**JOINT MOTION FOR APPROVAL OF SETTLEMENT AGREEMENT**

Plaintiff Ryan Morris ("Plaintiff') and Defendant PP&G, Inc. d/b/a the Norma Jeans Gentlemen's Club ("Defendant") (Plaintiff and Defendant are collectively the "Parties"), jointly move that Court approve the Parties' Settlement Agreement reached in this matter. In support, the Parties state as follows:

**I.    BACKGROUND**

1. On November 30, 2022, Plaintiff, on her own behalf, and on behalf of other similarly situated current and former exotic dancers, filed a hybrid Class and Collective Action Complaint against Defendant seeking individual and class-wide recovery of earned and unpaid or deducted wages and tips, statutory damages, and attorney's fees and costs under the Federal Fair Labor Standards Act ("FLSA"), Maryland Wage Hour Law ("MWHL"), and Maryland Wage Payment Collection Act ("MWPCL").

2. On March 1, 2023, Plaintiff filed her Motion pursuant to FLSA Section 216(b), therein requesting the Court (i) conditionally certify Plaintiff's proposed FLSA collective class and (ii) facilitate Court-authorized notice and opt-in forms to all FLSA collective class members of their rights to join and opt-in to this action.

3. On August 22, 2023, this Court granted Plaintiff's Motion and entered an Order (i) conditionally certifying and FLSA collective class comprised of individuals that worked or performed as exotic dancers for, at, or in Defendant's Norma Jeans Gentlemen's Club during the period March 2020, through the date of the Court's Order; (ii) directing Defendant to produce identifiers for all conditionally certified FLSA collective members; and (iii) authorizing Plaintiff's counsel's service of notice and opt-in forms to each FLSA collective class member of her right to opt-in to this action.

4. Defendant failed to comply with the Court's Order to produce identifiers for the conditionally certified FLSA class members within the time required by the Court's Order.

5. On October 30, 2023, Plaintiff, through counsel, filed a Correspondence with the Court requesting a Status Conference (i) to discuss Defendant's past failure to produce identifiers; (ii) to remedy the same; (iii) for the Court to issue a renewed Order requiring Defendant to produce identifiers within a required time period; (iv) for Plaintiff's counsel to service notice and opt-in forms to the FLSA collective class members; and (v) for FLSA collective class members to file opt-in notices with the Court to join this action.

6. On November 16, 2023, this Court issued an Amended Order requiring (i) Defendant's posting of the FLSA collective notice within Defendant's Norma Jeans Gentlemen's Club; (ii) Defendant's production of identifiers in Defendant's possession, custody, and control for the FLSA collective class members; (iii) directing Plaintiff's counsel to serve notice and opt-in forms on each FLSA collective class member for whom Defendant provided identifying information; and (iv) permitting FLSA collective class members sixty (60) days from the date of service of the notices and opt-in forms to opt-in to this action.

7. On November 16, 2023, Defendant produced identifiers for all conditionally certified FLSA collective members for whom Defendant had identifying information in its possession, custody, and control.

8. On November 20, 2023, Plaintiff's counsel served the FLSA collective notice and opt-in form on each FLSA collective member for whom Defendant provided identifying information through authorized mediums of first-class mail, email, and text message, to the extent this information was available in multiple mediums for each FLSA Collective Member.

9. On December 9, 2023, Defendant supplied proof to Plaintiff's counsel of Defendant's posting of the notice and opt-in form within Defendant's Norma Jeans Gentlemen's Club.

10. After thirty (30) days following Plaintiff's counsel's initial service of the FLSA collective notice and opt-in form on each FLSA collective member, Plaintiff's counsel received no completed opt-in forms from any of the conditionally certified FLSA collective members.

11. On December 21, 2023, as permitted by the Court's Amended Order, Plaintiff's counsel re-served the FLSA collective notice and opt-in forms on each FLSA collective member for whom Defendant provided identifying information through authorized mediums of first-class mail, email, and text message, to the extent this information was available in multiple mediums for each FLSA Collective Member.

12. On January 22, 2024, following an additional thirty (30) days, and the conclusion of the Court-authorized opt-in period, Plaintiff's counsel received no completed Opt-In forms from any of the conditionally certified FLSA collective members.

13. On January 22, 2024, following the conclusion of the opt-In period, and with no-opt-in plaintiffs joining this action, the Parties, through counsel, initiated a dialogue related to the full and final resolution of Plaintiff's individual FLSA and Maryland state law claims.

14. To facilitate the settlement dialogue, the Parties exchanged the limited documentation the Parties had in their possession, custody, or control, relating to Plaintiff's alleged exotic dancer employment within Defendant's Norma Jeans Gentlemen's Club, Plaintiff's counsel produced Plaintiff's estimations as to her compensable work hours and corresponding alleged damages arising from her alleged exotic dancer employment, and the Parties exchanged representations and legal arguments related to the strengths and viability of Plaintiff's legal claims and Defendant's defenses.

15. Thereafter, the Parties reached a full and final resolution of Plaintiff's FLSA and Maryland state law claims against Defendant in exchange for Thirty-Five Thousand Dollars and Zero Cents ($35,000.00), from which Plaintiff will receive payment of Twenty Thousand Four Hundred Seventy-Five Dollars and Zero Cents ($20,475.00), as full and final monetary settlement consideration for Plaintiff's individual claims for alleged earned and unpaid or deducted wages and tips, and Plaintiff's counsel will receive Fourteen Thousand Five Hundred Twenty-Five Dollars and Zero Cents ($14,525.00), as full and final monetary settlement consideration of Plaintiff's attorney's fees and costs. *See* the Parties' fully executed Settlement Agreement attached hereto as Exhibit 1.

16. Insofar as the Parties have resolved Plaintiff's claims, the Parties now seek this Court's approval of the settlement because settlement of an FLSA lawsuit must be approved by either the District Court or the U.S. Department of Labor. *Martinez v. HDS Lawn Maint. & Landscaping, Inc.*, 2017 WL 11506334, at *1 (E.D. Va. 2017).

## II.   THE COURT SHOULD APPROVE THE SETTLEMENT

The standard for approval of an FLSA settlement is outlined in *Brockman v. Keystone Newport News, LLC*, 2018 WL 4956514 *2 (E.D. Va. 2018), as follows:

> In evaluating a FLSA settlement agreement, the Court must determine three things: (1) that the FLSA issues are "actually in dispute"; (2) that the settlement is a "[r]easonable compromise over the issues"; and (3) if there is a clause on attorneys' fees then the award must reasonable and independently assessed. *Hendrix v. Mobilelink Va.*, LLC, 2017 WL 2438067, at *1 (E.D. Va. 2017) (citations omitted).

Generally, "where there is an 'assurance of an adversarial context' and the employee is 'represented by an attorney who can protect [his] rights under the statute,' the settlement will be approved. *Duprey v. Scotts Co. L.L.C.*, 30 F. Supp. 3d 404, 408 (D. Md. 2014) (quoting *Lynn's Food Stores*, 679 F.3d at 1354).[1]

As set forth in greater detail below, the Parties Settlement Agreement in this matter satisfies the requisite criteria.

### A. The Settlement Resolves a Bona Fide Dispute of FLSA Claims.

The Parties' FLSA settlement represents a resolution of a *bona fide* dispute, described as follows:

1. Plaintiff alleges that during the potential maximum 3-year FLSA statutory recovery period, Plaintiff worked or performed as an exotic dancer within Defendant's Norma Jeans Gentlemen's Club from November 22, 2019, through Mid-March 2020, and again from about August 15, 2020, through about September 15, 2021, a total of about Sixty-Eight (68) weeks.

2. Plaintiff alleges that during the relevant period, she did not work the same number of shifts or hours each week, and that in some weeks, Plaintiff did not work any shifts.

3. Plaintiff alleges that, as a reasonable estimation, she worked or performed Three (3) shifts, each lasting about Six (6) hours, in about Eighty Percent (80%) of the weeks during the relevant period.

4. Plaintiff alleges that throughout the entirety of her period of employment, Defendant misclassified her as a non-employee contractor.

---

[1] *Lynn's Food Stores v. United States*, 679 F.3d 1350 (11th Cir. 1982).

5. Plaintiff alleges that throughout the entity of her period of employment, Defendant paid her no wages or other form of compensation for all hours she worked or performed as an exotic dancer.

6. Plaintiff alleges that as a mandatory condition for each shift she worked, Defendant required her to pay Defendant a "house fee" in the average amount of $40.00 per shift.

7. Plaintiff alleges that at the conclusion of each shift, Defendant required her to pay or assign portions of the tips she received from Defendant's customers to Defendant's managers, supervisors, DJ, security, and other assigns, in the average amount of $25.00 per shift.

8. Plaintiff alleges that, pursuant to the FLSA, Defendant owes her (i) payment for all hours worked at the Federal Minimum Wage Rate of $7.25 per hour; (ii) reimbursement of all "house fee" payments paid by she to Defendant; and (iii) reimbursement of all of her earned tips deducted or assigned to Defendant's managers, supervisors, DJ, security, and other assigns.

9. Applying the foregoing, Plaintiff alleges that under the FLSA, Defendant owes her earned and recoverable minimum wage compensation and tips in the amount of Seventeen Thousand Seven Hundred Seven Dollars and Twenty Cents ($17,707.20), calculated as follows:

| Total Work Weeks Alleged in Relevant FLSA Recovery Period | 80% of Weeks as Actual Work Weeks | Average Shifts Per Week | Average Work Hours Per Shift | Total Work Hours Per Week | Federal Minimum Wage Rate | Pre-House Fee/Tip Reimbursement Minimum Wage Owed Per Week | House Fee Paid Per Shift | Total House Fee Reimbursement Owed Per Week | Total Tip Deductions / Assignments Paid Per Shift | Total Tip Deduction Assignment Reimbursement Owed Per Week | Total Wages / "House Fees" / Tips Owed Per Week | Total Wages / "House Fees" / Tips Owed for 80% of Weeks Estimated as Actual Work Weeks |
|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 68 | 54.4 | 3 | 6 | 18 | $7.25 | $130.50 | $40.00 | $120.00 | $25.00 | $75.00 | $325.50 | $17,707.20 |

10. Plaintiff alleges that, pursuant to the FLSA, Defendant owes her statutory liquidated damages in an equal amount ($17,707.20), plus payment of her attorney's fees and costs.

11. Defendant contends that, even if Defendant is found in this action to have violated the FLSA, no evidence suggests that such a violation was perpetrated willfully by Defendant such that a Three (3) year statutory recovery should apply. As such, Defendant argues that Plaintiff's potential FLSA recovery is limited in this action to Two (2) years, relating back only to November 22, 2020.

12. Defendant contends that during the Two (2) year FLSA recovery period, November 22, 2020, through September 15, 2021, Defendant's Norma Jeans Gentlemen's Club was closed by COVID-19 restrictions and, consequently, Plaintiff could not have worked or performed as an exotic dancer within Defendant's Norma Jeans Gentlemen's Club in any week or on any day the club was closed.

13. Despite that fact that neither and Defendant have substantial or reliable records relating to the number of shifts and/or the hours Plaintiff worked or performed as an exotic dancer within Defendant's Norma Jeans Gentlemen's Club, Defendant asserts its witnesses will testify Plaintiff greatly exaggerated the number of shifts and hours she worked.

14. Defendant asserts its witnesses will testify that Plaintiff worked or performed sporadically within Defendant's Norma Jeans Gentlemen's Club, (i) often working One (1) or less shifts per week; (ii) regularly going multiple weeks without working any shifts; (iii) and working or performing only Three (3) or Four (4) total hours in any shift she elected to work.

15. Defendant disputes that Plaintiff was misclassified as a non-employee contractor.

16. Defendant asserts Defendant simply agreed to Plaintiff's request to be classified as a non-employee contractor because she is a professional exotic dancer, in business for herself, with her own clientele that follow her from club-to-club, and that she elects, without input or control by Defendant, when, where, and for how long she wishes to perform as an exotic dancer either within Defendant's Norma Jeans Gentlemen's Club or within any other number of gentlemen's clubs in Metropolitan Baltimore, or elsewhere.

17. Defendant disputes whether Plaintiff paid a "house fee" every shift she worked or performed as an exotic dancer within Defendant's Norma Jeans Gentlemen's Club.

18. Defendant asserts that the charging of a "house fee" was an old business practice that was phased out prior to the relevant period in this action.

19. Defendant asserts that, to the extent Plaintiff recalls payment of a "house fee," either this recollection relates to periods prior to the relevant recovery period in this action, or instances where an employee or agent on behalf of Defendant acted contrary to Defendant's policies or practices.

20. Defendant disputes whether it ever required Plaintiff to pay or assign any portion of the tips she received from Defendant's customers to any of Defendant's agents or assigns.

21. Defendant asserts that "tipping out" and related post-shift distribution of exotic dancer tips was an old business practice that was phased out prior to the relevant period in this action.

22. Defendant asserts that, to the extent Plaintiff recalls "tipping out" to any of Defendant's employees or agents, either this recollection relates to periods prior to the relevant recovery period in this action, instances where an employee or agent on behalf of Defendant acted contrary to Defendant's policies or practices, or circumstances where Plaintiff voluntarily shared tips but was not required or otherwise compelled to do so.

23. Defendant asserts that because Plaintiff was properly classified as a non-employee contractor, Plaintiff is entitled to no recovery in this action under the FLSA.

24. In the alternative, Defendant asserts if any FLSA liability is found, Plaintiff's anticipated available recovery should be substantially reduced because (i) Plaintiff's FLSA recovery is limited to a maximum of Two (2) years; (ii) Plaintiff greatly inflates or over-estimates the number of shifts and hours she worked; (iii) Plaintiff did not pay a "house fee" and/or at least did not regularly pay a "house fee"; and (iv) Plaintiff did not pay or assign her tips to Defendant's managers or agents and/or at least did not required or compelled to do so.

25. Finally, Defendant argues that Plaintiff's unclean hands arising from her request to be treated and classified as a non-employee contractor and Plaintiff's personal benefit leaves Plaintiff with unclean hands and Defendant with a good faith argument to avoid any potential award of FLSA statutory liquidated damages in this action.

**B.     The Settlement Agreement is a reasonable compromise.**

This Court considers the following in determining whether the settlement is a "reasonable compromise,":

> (1) the extent of discovery that has taken place; (2) the stage of the proceedings, including the complexity, expense and likely duration of the litigation; (3) the absence of fraud or collusion in the settlement; (4) the experience of counsel who have represented the plaintiffs; (5) the opinions of [ ] counsel...; and (6) the probability of plaintiffs' success on the merits and the amount of the settlement in relation to the potential recovery.

*Brockman v. Keystone Newport News, LLC*, 2018 WL 4956514 at *2 (quoting *Hendrix v. Mobilelink Va., LLC,* 2017 WL 2438067, at *1).

### i. Extent of Discovery

The settlement was reached after the Parties participated in a voluntary and cooperative exchange of informal discovery. At the time of settlement, the Parties had a full and fair opportunity to review the limited records in the Parties' possession, custody, and control related to Plaintiff's alleged employment relationship with Defendant, were fully aware of the factual and legal support of the Parties' claims and defenses, and the settlement reached fully considers the strengths and weaknesses of the Parties' positions.

### ii. Stage of Proceedings

The Parties reached settlement at an early stage of the litigation, but at a time where the Parties were in full recognition of the full scope of Plaintiff's potential claim as well as the risks to each side. Furthermore, this matter was resolved prior to the Parties prior to incurring substantial fees and costs associated with continued litigation of this matter.

### iii. Absence of Fraud or Collusion

There is presumptively no fraud or collusion between the parties "in the absence of any evidence to the contrary." *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-1310, 2009 WL 3094955, at *12 (E.D. Va. 2009). The Parties reached settlement after a period of informal discovery and through arms-length negotiations conducted by the Parties' self-selected legal counsel. The settlement and negotiations were devoid of any indicia of fraud or collusion.

### iv. Counsel's Experience

Counsel for both sides have extensive experience with FLSA cases.

### v. Opinions of Both Parties Counsel

Counsel for both sides believe the settlement is fair and reasonable.

### vi. Probability of Plaintiff's Success and Potential Recovery

As noted above, Plaintiff's FLSA claims are highly disputed and if Defendant succeeds on its non-employee contractor classification position, Plaintiff would be entitled to zero recovery. Despite the *bona fide* dispute as to the merits and Plaintiff's entitlement to any recovery, the Parties agreed to a dismissal of Plaintiff's claims, with prejudice, in exchange for a settlement payment by Defendant to Plaintiff in the total amount of Thirty-Five Thousand Dollars and Zero Cents ($35,000.00), as well as non-monetary terms as set forth in the Agreement. The settlement payment will result in a recovery in a settlement payment to Plaintiff, individually, in the amount of Twenty Thousand Four Hundred Seventy-Five Dollars and Zero Cents ($20,475.00), for claimed unpaid or deducted wages and tips, statutory damages, and payment for Plaintiff's attorney's fees and litigation expenses in the amount of Fourteen Thousand Five Hundred Twenty-Five Dollars and Zero Cents ($14,525.00). Consequently, Plaintiff's individual recovery from the settlement payment represents payment of approximately 1.15x the total earned and unpaid or deducted tips and wages she claims due and owing to her in this action for the entire Three (3) year FLSA recovery period, as calculated above. This amount is eminently fair considering both parties face risk and uncertainty as to success on the merits, as described in further detail *supra*.

### C. The attorneys' fees and costs are reasonable.

The FLSA provides in part that "the court shall, in addition to any judgment awarded to plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by defendant, and costs of the action." 29 U.S.C. § 216(b). The settlement agreed to by the parties reflects this and rather than engaging in a time consuming and costly fee fight over the amount of attorneys' fees, the parties here were able to reach a resolution of the claim for attorneys' fees and costs.

The Settlement Agreement provides that Plaintiff's counsel will receive Fourteen Thousand Five Hundred Twenty-Five Dollars and Zero Cents ($14,525.00) as payment of Plaintiff's attorney's fees and out-of-pocket litigation expenses. In determining an award of reasonable attorney's fees, the Court must determine a lodestar figure by "multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009) (citing *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008)); *see also Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

In assessing the reasonability of the lodestar figure, the Court customarily references the "*Johnson* factors" enumerated in *Johnson v. Georgia Highway Express., Inc.*, 488 F.2d 714 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216 (4th Cir. 1978). These factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Id*. at 226 n.28.3[2]

---

[2] "The court need not independently address each factor because such considerations are usually subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate." *Hensley*, 461 U.S. at 434 n.9.

To calculate the proper award of attorneys' fees, the Court should "determine a lodestar figure by multiplying the number of reasonable hours expended times a reasonable rate." *Daly v. Hill,* 790 F.2d 1071, 1077 (4th Cir. 1986).  In determining whether Plaintiff's counsel Gregg C. Greenberg's settlement attorney fee and cost recovery is reasonable, this Court references the hourly rates in the legal community where this action is litigated. *See Robinson*, 560 F.3d at 244.

Plaintiff's counsel Gregg C. Greenberg[3]'s lodestar at the time of settlement calculated to attorney's fees in the amount of $16,065.00, representing 37.8 hours of attorney billing at the billing rate of $425.00 per hour, plus an award of litigation expenses in the amount of $502.00.  Given the risks associated with continued litigation and trial in this matter, and because Plaintiff was satisfied with her individual recovery of unpaid wages, tips, and damages in the amount of $20,475.00, Gregg C. Greenberg, agreed to reduce his settlement recovery of attorney's fees and costs to $14,525.00.  Based upon the foregoing, the attorney fee and cost recovery set forth in the Parties' Settlement Agreement is fair and reasonable.

---

[3] Gregg C. Greenberg received his Juris Doctor from the University of Detroit Mercy School of Law in May 2007 and has been licensed to practice law continuously since 2007.  He is licensed to practice law in Federal and State courts in Maryland, Virginia, and the District of Columbia.  Every year since 2014, he has been nominated by his peers as a Super Lawyer in Maryland and the District of Columbia in the practice area of Employment Litigation for Plaintiffs and he currently serves as the Vice President of the Maryland Employment Lawyers Association.  For the entirety of his legal career, he has concentrated my law practice on representing individuals and classes of individuals with claims related to their employment, with a focus on prosecuting state and Federal wage and hour claims.  Gregg C. Greenberg seeks recovery of attorney's fees for his billing on behalf of Plaintiff in this matter at the rate of $425.00 per hour, a rate that is in accord Appendix B of the Local Rules of this Court denoting presumptively reasonable billing rates for attorneys, like Gregg C. Greenberg, admitted to the bar for fifteen (15) to nineteen (19) years.

## CONCLUSION

For the foregoing reasons, the parties jointly request that the Court approve the Settlement Agreement and enter the Proposed Order provided as an attachment to the parties' motion, thereby dismissing Plaintiff's Complaint with prejudice.

Dated: February 7, 2024			Respectfully submitted,

                                                      ___/s/__Gregg C. Greenberg_____
Gregg C. Greenberg, Esq.
Zipin, Amster & Greenberg, LLC
8757 Georgia Avenue, Suite 400
Silver Spring, Maryland 20910
Phone: 301-587-9373
Email: ggreenberg@zagfirm.com

*Counsel for Plaintiff*

____/s/__Jeffrey R. Scholnick_____
Jeffrey Scholnick, Esq.
Law Office of Jeffrey R. Scholnick, P.A.
9515 Deereco Road, Suite 407
Timonium, Maryland 21093
Phone: (410) 494-9944
Email: JScholnick@Scholnicklaw.com

*Counsel for Defendant*

## CERTIFICATE OF SERVICE

I hereby certify that on this 7th day of February 2024, a true and correct copy of the foregoing was served electronically on all counsel of record by and through the Court's ECF System.

                                               ___/s/__Gregg C. Greenberg___
Gregg C. Greenberg